# Illinois Official Reports

## Appellate Court

*Watkins v. Ingalls Memorial Hospital*, 2018 IL App (1st) 163275

| | |
|---|---|
| Appellate Court Caption | JOHNNIE WATKINS, as Guardian of the Estate of Johnnice Ford, a Disabled Person, Plaintiff-Appellant, v. INGALLS MEMORIAL HOSPITAL, a Corporation, INGALLS HEALTH SYSTEM, a Corporation, SOUTH SUBURBAN NEUROLOGY, LTD., a Corporation, MARVIN ZELKOWITZ, M.D., SAIF NAZIR, M.D., and LARRY FOSTER, M.D., Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-16-3275, 1-17-0782, 1-17-0964 cons. |
| Rule 23 order filed | March 15, 2018 |
| Motion to publish allowed | April 19, 2018 |
| Opinion filed | April 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-L-687; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Susan E. Loggans & Associates (Susan E. Loggans and Patrick Condron, of counsel), and Law Office of Harry C. Lee (Harry C. Lee and Debra A. Thomas, of counsel), both of Chicago, for appellant.<br><br>Donohue Brown Mathewson & Smyth, LLC, of Chicago (Karen Kies DeGrand, John M. McGarry, and Amanda Balen, of counsel), for appellees Ingalls Memorial Hospital and Ingalls Health System. |

Pretzel & Stouffer, Chtrd. (Scott L. Howie, of counsel), and Steptoe & Johnson, LLP (James A. Christman and Caroline E. Carlson, of counsel), both of Chicago, for appellees South Suburban Neurology, Ltd., and Marvin Zelkowitz.

Nora & Partners, LLP, of Chicago (Robert L. Nora, Taylor V. Nora, and Elizabeth M. Polit, of counsel), for other appellees.

Panel      PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Gordon and Ellis concurred in the judgment and opinion.

## OPINION

¶ 1  On August 20, 2010, Johnnice Ford filed a complaint in the circuit court of Cook County "individually, and as mother and next best friend of Jaiyana Ford, a minor." In her complaint, Ford alleged medical malpractice against various medical professionals, including each of the defendants here. Ford contended that the defendants negligently failed to diagnose and treat her during her September 2008 visit to Ingalls Memorial Hospital. The complaint was filed shortly before the expiration of the two-year statute of limitations period applicable to medical malpractice actions under section 13-212(a) of the Code of Civil Procedure (Code) (735 ILCS 5/13-212(a) (West 2008)). On September 14, 2010, the circuit court granted Ford's motion to voluntarily dismiss the complaint. On July 15, 2014, plaintiff, Johnnie Watkins, "as Guardian of the Estate of Johnnice Ford, a disabled person," filed a complaint in the circuit court, naming as defendants Ingalls Memorial Hospital and Ingalls Health System (collectively, Ingalls) and Bari Parks-Ballard, M.D. The allegations in the complaint largely mirrored the allegations raised in the 2010 complaint concerning Ford's treatments at Ingalls Memorial Hospital in September 2008. Ingalls filed a motion to dismiss, but before the circuit court could address plaintiff's complaint, the case was removed to federal court by the United States of America, which substituted itself as defendant for Dr. Parks-Ballard, who was a federal employee. The federal district court dismissed the case, finding that plaintiff had failed to exhaust her administrative remedies. Plaintiff never sought to transfer the remaining state law claims against Ingalls to the circuit court.

¶ 2  In September 2015, plaintiff filed a complaint in the federal district court for the Northern District of Illinois against the United States, as the principal of Dr. Parks-Ballard. Plaintiff alleged negligence against the United States for the treatment provided to Ford at Ingalls in September 2008, echoing the claims from the 2010 and 2014 complaints. The federal district court granted the United States' motion to dismiss the complaint, and the United States Court of Appeals for the Seventh Circuit affirmed that ruling.

¶ 3  On January 21, 2016, plaintiff filed the instant action, the fourth complaint concerning the same operative facts and cause of action. The principal allegations of the complaint once again

concerned Ford's treatment at Ingalls in September 2008. All defendants moved to dismiss the action under section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), chiefly contending that the action was barred by the statute of limitations, the statute of repose, and the refiling limitation of section 13-217 of the Code (735 ILCS 5/13-217 (West 1994)).[1] Ingalls also contended that the conduct of plaintiff's attorneys was sanctionable under Illinois Supreme Court Rule 137 (eff. July 1, 2013). The circuit court granted defendants' motions, finding that the 2016 complaint was an unpermitted refiling of the original action. The court determined that the 2014 complaint was the one, and only, refiling of the 2010 action permitted pursuant to section 13-217. The court also found that plaintiff's claims were barred by *res judicata*. The court subsequently denied Ingalls's motion for Rule 137 sanctions.

¶ 4    On appeal, plaintiff asserts that the circuit court erred in granting defendants' motions to dismiss where there was a question of fact as to whether Ford was under a mental disability at the time the 2010 complaint was filed, rendering that action a nullity and tolling the limitations periods. Plaintiff also contends that she was not appointed as Ford's guardian until 2015, and thus lacked the authority to bring the 2014 complaint on Ford's behalf. Plaintiff therefore asserts that the 2016 action was not barred by section 13-217 because it was the first new action brought against these defendants by Ford or on her behalf. Plaintiff also asserts that the doctrines of collateral estoppel and *res judicata* do not bar her claims. Ingalls contends that the circuit court erred in denying its motion for sanctions. For the reasons discussed below, we affirm the judgment of the circuit court.

¶ 5                              I. BACKGROUND
¶ 6                           A. The 2010 Complaint
¶ 7    On August 20, 2010, Ford filed a complaint in the circuit court "individually, and as mother and next best friend of Jaiyana Ford, a minor." Ford named as defendants all of the defendants in the case at bar and other medical professionals. In her complaint, Ford alleged that, on August 20, 2008, the physician defendants rendered medical care to her while she was pregnant. On September 10, 2008, Ford checked into the emergency room at Ingalls. During the course of Ford's treatment at Ingalls, she underwent an emergency caesarean section. Ford was later transferred to another hospital and diagnosed with Wernicke's Encephalopathy, Dry Beriberi, and Pseudobulbar palsy. Ford asserted that the physicians at Ingalls failed to properly diagnose and treat her, which directly caused her serious medical conditions, rendering her disabled. Ford contended that since her treatment at Ingalls, she had been "lethargic, bedridden, and incapable of fully caring for herself, and require[d] constant care and attention."

¶ 8    Ford's attorney attached an affidavit to the complaint, stating that he had recently obtained Ford's complete medical records and required time to have the records reviewed by proper medical professionals. Ford's attorney maintained that he was therefore unable to comply with section 2-622 of the Code (735 ILCS 5/2-622 (West 2008)) as required for medical malpractice

---

[1]Public Act 89-7, which amended section 13-217 of the Code effective March 1995 (Pub. Act 89-7 (eff. Mar. 9, 1995)), was held to be unconstitutional in its entirety by the Illinois Supreme Court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Accordingly, the effective version of section 13-217 of the Code is the version that was in effect prior to the March 1995 amendment. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1 (2008).

actions. On September 14, 2010, Ford voluntarily dismissed the action without prejudice, and the circuit court permitted her "leave to re-file within one year."

¶ 9                                     B. 2014 Complaint

¶ 10        Nearly four years later, on July 15, 2014, plaintiff filed a complaint in the circuit court "as Guardian of the Estate of Johnnice Ford, a disabled person." In this action, plaintiff named only Ingalls and Dr. Bari Parks-Ballard as defendants. In the complaint, plaintiff contended that on September 10, 2008, Ford received treatment at Ingalls by Dr. Parks-Ballard. Plaintiff contended that Dr. Parks-Ballard negligently failed to properly care for and treat Ford, resulting in her current medical conditions. One of plaintiff's attorneys attached an affidavit to the complaint, averring that counsel was unable to obtain a consultation as required by section 2-622 of the Code (735 ILCS 5/2-622 (West 2014)) because "the statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations." Ingalls filed a motion to dismiss the complaint, but before the trial court could rule on the motion, the United States removed the case to federal court, substituting itself as defendant in place of Dr. Parks-Ballard, a federal employee. The United States District Court for the Northern District of Illinois subsequently dismissed the action because plaintiff failed to exhaust her administrative remedies before filing suit. *Watkins v. Ingalls Memorial Hospital*, No. 14-CV-08417 (N.D. Ill. Jan. 27, 2015). Plaintiff never sought to transfer the remaining state law claims against Ingalls to the circuit court.

¶ 11                                    C. 2015 Complaint

¶ 12        On September 16, 2015, plaintiff filed a complaint "as Guardian of the Estate of Johnnice Ford, a disabled person" in the United States District Court for the Northern District of Illinois against the United States, as the principal of Dr. Parks-Ballard. As in the 2014 complaint, plaintiff claimed Dr. Parks-Ballard committed malpractice in failing to treat and diagnose Ford at Ingalls on September 10, 2008. The district court granted the United States' motion to dismiss the complaint, finding that the claim was time barred under the Federal Tort Claims Act (FTCA) (28 U.S.C. § 2675 (2012)) statute of limitations. *Watkins v. United States*, No. 15-CV-8350, 2016 WL 1435704 (N.D. Ill. Apr. 12, 2016). The court stated that the issue was determining when plaintiff's claim accrued and that "the 2010 lawsuit against Dr. Parks-Ballard resolves any doubt about whether Ford (and by extension Plaintiff) knew of the doctor-related cause of her injuries. Her claims thus accrued, *at the latest*, by August 20, 2010." (Emphasis in original.) *Id.* at *2. The court found that despite plaintiff's claims that Ford's disability tolled the limitations period, Ford's filing of the 2010 complaint "indisputably establishes that Plaintiff was sufficiently aware of her injuries and their cause to trigger the limitations period." *Id.* at *3. On April 27, 2017, after the circuit court in this case granted defendants' motions to dismiss, the United States Court of Appeals for the Seventh Circuit affirmed the district court's ruling. *Watkins v. United States*, 854 F.3d 947 (7th Cir. 2017).

¶ 13                                    D. 2016 Complaint

¶ 14        Plaintiff filed the instant action on January 21, 2016, again "as Guardian of the Estate of Johnnice Ford, a disabled person." Plaintiff's contentions again concerned Ford's treatment by the physician defendants at Ingalls in September 2008. This represented the fourth such

complaint filed by Ford or on Ford's behalf relating to same cause of action. Ingalls filed a motion to dismiss plaintiff's complaint contending that plaintiff's complaint was based on the same facts and same cause of action as Ford's 2010 complaint and plaintiff's 2014 action and should, therefore, be dismissed under section 13-217 of the Code (735 ILCS 5/13-217 (West 1994)). Ingalls contended that section 13-217 barred this action because the complaint represented a second refiling of Ford's 2010 action and section 13-217 permits only one refiling after a complaint is voluntarily dismissed. In the alternative, Ingalls contended that plaintiff's complaint should be dismissed under section 13-217 because it was filed more than one year after Ford's 2010 action was voluntarily dismissed. Before the court could rule on Ingalls's motion, plaintiff filed an amended complaint.

¶ 15 In the amended complaint, plaintiff contended that at the time Ford's cause of action accrued, or before the applicable statute of limitations period had expired, she was under a legal disability, which stayed the limitations period until the disability was removed. Plaintiff asserted that Ford's disability was evidenced by her medical records, the fact that she was adjudicated disabled in January 2015, and plaintiff's appointment as guardian of Ford's estate. Plaintiff asserted that, therefore, her time to refile the action under section 13-217 had not yet expired. Plaintiff further contended that the 2014 action did not qualify as a refiling because the case was dismissed for plaintiff's failure to exhaust administrative remedies, rather than for one of the reasons enumerated in section 13-217.

¶ 16 <center>1. <i>Defendants' Motions to Dismiss</i></center>

¶ 17 All defendants filed motions to dismiss plaintiff's amended complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2014)). Ingalls contended in a motion to dismiss that plaintiff's complaint should be dismissed because under section 13-217, this action represented a second, impermissible refiling of Ford's 2010 action, and section 13-217 permits only one refiling. Ingalls contended that Ford's care at Ingalls in 2008 has been the basis of all of her filings since her first complaint in 2010 and that the statute prevented this refiling of her claims. Ingalls argued that, in the alternative, plaintiff's complaint should be dismissed because it was filed more than one year after the original action was dismissed, or because it was filed after the expiration of the applicable statute of repose. Ingalls also noted that in the amended complaint, plaintiff cited the amended version of section 13-217 in her brief, which was found unconstitutional. Ingalls maintained that sanctions were warranted under Illinois Supreme Court Rule 137 (eff. July 1, 2013) where plaintiff impermissibly filed the lawsuit three times and relied on an unconstitutional version of section 13-217 to support her arguments.

¶ 18 The motions to dismiss filed by defendants Dr. Saif Nazir and Larry Foster[2] and defendants Dr. Marvin Zelkowitz and South Suburban Neurology, Ltd., largely echoed the arguments made by Ingalls in their motion concerning section 13-217. Dr. Saif Nazir and Larry Foster also contended that both the statute of limitations and the statute of repose had elapsed and that Ford's disability had not tolled the limitations period. Dr. Marvin Zelkowitz and South Suburban Neurology, Ltd., contended that because they were not named as defendants in the 2014 complaint, plaintiff could not use the relation-back doctrine to relate her claims against

---

[2] Dr. Saif Nazir and Larry Foster noted that plaintiff mistakenly represented that Larry Foster was an M.D., but he is a PA-C, a physician assistant.

Dr. Marvin Zelkowitz and South Suburban Neurology, Ltd., back to when she filed the 2014 action.

¶ 19       In response, plaintiff contended that her complaint should not be dismissed because there was a question of fact as to whether Ford was under a legal disability at the time her cause of action accrued, thus tolling the limitations period. Plaintiff recognized that although Ford was not adjudicated disabled until 2015, the allegations in the complaint and the attached letters from physicians raised a genuine issue as to whether Ford was under a legal disability at the time her cause of action accrued. Plaintiff further asserted that the 2014 action was filed before Watkins was judicially appointed as Ford's guardian, and thus plaintiff had no authority to file that action on Ford's behalf. Plaintiff maintained that the 2014 action, therefore, could not be considered a valid refiling on the 2010 action for purposes of section 13-217. Plaintiff contended that this action thus represented the first refiling against defendants by a person authorized to file an action under section 13-217, and within the limitations period, which was tolled due to Ford's legal disability.

¶ 20       *2. Circuit Court's Ruling*

¶ 21       In ruling on defendants' motions, the circuit court determined that "the record contains sufficient evidence to raise a question of fact as to whether Ms. Ford was under a legal disability at the time this cause of action accrued in September of 2008." The court found that the letters of Ford's treating physicians and the allegations in the 2010, 2014, and 2016 complaints established enough evidence to raise a question of fact as to Ford's legal disability. The court concluded that, therefore, the action could not be dismissed on the basis of the expiration of the statutes of limitations and repose.

¶ 22       The court further noted that the 2010 action was filed against all of the defendants named in this case, but the 2014 action named only Ingalls and Dr. Parks-Ballard as defendants. The court found that it was "crucial" to note that the 2014 action was filed by the same law firm that was currently representing plaintiff in the 2016 action. The court, therefore, found plaintiff's argument that the 2014 action was a nullity or not relevant was unpersuasive. The court found that the fact that plaintiff had not yet been appointed Ford's guardian at the time the 2014 complaint was filed was merely a "technical defect," which could have been "cured by actual issuance of letters of office as guardian, and a motion for leave to substitute could have been presented and granted, and the 2014 pleading would have related back to the date of the original filing of the 2014 action."

¶ 23       The court observed that after the 2014 action was removed to federal court and dismissed for plaintiff's failure to exhaust her administrative remedies, plaintiff made no attempt to pursue the action against Ingalls. The court noted that although there was no adjudication of the claim with regard to Ingalls, the 2014 action constituted plaintiff's one refiling against Ingalls permitted under section 13-217.

¶ 24       The court further found that the doctrine of *res judicata* applied to bar plaintiff's claims against all of the physicians originally named as defendants in the 2010 action. The court observed that, although these physicians were not named as defendants in the 2014 action, they could have been. The court therefore granted defendants' motions to dismiss the complaint pursuant to section 2-619(a)(5) of the Code. Plaintiff appealed the circuit court's ruling.

¶ 25                                    3. *Ingalls Motion for Sanctions*

¶ 26        After the trial court entered its order dismissing plaintiff's complaint, Ingalls filed a motion for a ruling on its motion for sanctions. In ruling on Ingalls's motion, the court found that although plaintiff's attorneys should have realized the version of section 13-217 cited in the amended complaint had been previously invalidated, such an error did not support the imposition of sanctions. The court further found that the plaintiff's refiling of an action more than once on a basis that was found to be incorrect did not warrant sanctions. Accordingly, the court found that Ingalls failed to meet its burden to demonstrate that sanctions were warranted. Ingalls appealed the circuit court's ruling, and the case was consolidated with plaintiff's appeal.

¶ 27                                    II. ANALYSIS

¶ 28        On appeal, plaintiff contends that the court erred in granting defendants' motions to dismiss where there was a question of fact as to whether Ford was legally disabled at the time her cause of action accrued. Plaintiff asserts that Ford's status as legally disabled adult precluded the presumption that the 2010 action was brought by an attorney with the authority to do so. Plaintiff further contends that the circuit court erred in "applying the relation-back rule, offensively, to find that the 2014 action was the one permitted refiling of the 2010 action," and dismissing the complaint on that basis. Plaintiff maintains that at the time the 2014 action was filed, she had not been appointed Ford's guardian, and her appointment as guardian was not a mere "technical defect" that could be cured by plaintiff's later appointment. Plaintiff also contends that the court erred in applying the doctrine of *res judicata* to bar her claims where the physician defendants were not named in the 2014 action.

¶ 29                                A. Standard of Review

¶ 30        Defendants brought their motions to dismiss plaintiff's complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)). A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint, but asserts affirmative matters outside of the complaint that defeat the cause of action. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 31. When ruling on a section 2-619 motion to dismiss, the court must view all pleadings in a light most favorable to the nonmoving party (*Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8) and accept as true all well-pleaded facts (*Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31). We review the dismissal of a cause of action pursuant to section 2-619 of the Code *de novo*. *Hoover*, 2012 IL App (1st) 110939, ¶ 31.

¶ 31                            B. Plaintiff's Multiple Complaints

¶ 32        By voluntarily dismissing her 2010 complaint, Ford invoked section 13-217 of the Code, which provides, in pertinent part, that if the plaintiff voluntarily dismisses a cause of action, "the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater," after the "action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13-217 (West 1994). As such, section 13-217 would appear to bar the instant action, given that plaintiff, as Ford's administrator, previously refiled Ford's 2010 action in 2014, and then again in 2016. Nonetheless, plaintiff contends that the circuit court erred in failing to consider the impact of Ford's legal incapacity in finding the 2010 and 2014 complaints to be valid actions brought on Ford's behalf. Plaintiff

asserts that the circuit court's finding that there was a question of fact as to Ford's legal capacity at the time she filed the 2010 complaint should have precluded the presumption that the initial action was brought by an attorney with authority to do so. Similarly, plaintiff contends that where she was not appointed to be Ford's guardian until 2015, the court erred in finding that the 2014 action was a proper complaint brought on Ford's behalf.

¶ 33                                    1. *Section 13-217*

¶ 34    As noted, section 13-217 allows a plaintiff to refile a cause of action within one year of its dismissal or within the remaining limitations period, whichever is greater. *Schrager v. Grossman*, 321 Ill. App. 3d 750, 754 (2000). Although section 13-217 provides plaintiff with the "absolute right" to refile a complaint within one year or within the remaining limitations period, it was not intended to permit multiple refilings of the same action. *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 163 (1997). "This court has interpreted section 13-217 as permitting only one refiling even in a case where the applicable statute of limitations has not yet expired." *Id.* (citing *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254 (1991)).

¶ 35                              2. *Ford's Legal Disability*

¶ 36    Here, the circuit court found that the record contained "sufficient evidence to raise a question of fact as to whether Ms. Ford was under a legal disability at the time this cause of action accrued in September of 2008." The court based this finding on the letters of her treating physicians and the reports of reviewing health care professionals, which suggested that "she suffered from cognitive dysfunction at the time of her 2008 hospitalization that would make her unable to care for herself and make decisions about her financial affairs or person." The court further found that her mental condition was suggested in each of the complaints at issue in this case. The court found that the 2016 complaint could, therefore, not be dismissed on the basis of the expiration of the statute of limitations or statute of repose. Nonetheless, the court found that, under section 13-217, plaintiff's instant complaint represented an impermissible refiling of Ford's 2010 action, where plaintiff had previously used her one opportunity to refile the action in 2014.

¶ 37                              a. The 2010 Complaint

¶ 38    Plaintiff first contends that the court erred in failing to consider the impact of her legal incapacity on the validity of the 2010 complaint. Plaintiff contends that where there was a question of fact as to her legal capacity at the time the complaint was filed, the court should not have presumed that the 2010 action was brought by an attorney with the authority to file the action. Plaintiff contends that if Ford were legally incompetent in 2008, she could not have entered into an attorney-client relationship in 2010 and authorized the filing of the suit.

¶ 39                                    i. *Waiver*

¶ 40    We first observe, as defendants point out, that plaintiff did not raise this issue in the circuit court. In fact, in plaintiff's combined response to defendants' motion to dismiss, plaintiff acknowledged that the 2010 complaint could be attributed to Ford. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 41    Plaintiff contends, however, that waiver does not bar her claims because she is not asking this court to decide the issue but, rather, requesting that we remand the case for an evidentiary hearing to determine Ford's competency. Plaintiff contends that defendants would not be prejudiced if we remand the case for an evidentiary hearing because they will have the opportunity to cross-examine witnesses and present evidence. However, even if we were to find no waiver, we would find plaintiff's argument unpersuasive.

¶ 42                                 ii. *The 2010 Action Was Valid*

¶ 43    In support of her contention that Ford had a right to an evidentiary hearing to determine her competency to enter into an attorney-client relationship in 2010, plaintiff relies on *Lydon v. Eagle Food Centers, Inc.*, 297 Ill. App. 3d 90 (1998). In *Lydon*, the plaintiff was injured in defendant's supermarket and hired an attorney who filed suit on plaintiff's behalf in the circuit court of Lake County. *Id.* at 92. One day earlier, another attorney filed suit in the circuit court of Cook County, allegedly on plaintiff's behalf. *Id.* Plaintiff filed an affidavit, stating that she did not know the attorney who filed the Cook County action, had never spoken with him, and did not retain him to represent her. *Id.* at 94. The Cook County action was subsequently dismissed for want of prosecution. *Id.* Seven months later, plaintiff voluntarily dismissed the Lake County action. *Id.* Plaintiff refiled the Lake County action exactly one year later, and defendant moved to dismiss arguing that section 13-217 permitted only one refiling. *Id.* Defendant contended that this refiled action constituted plaintiff's third filing of the same incident. *Id.* The circuit court granted defendant's motion and plaintiff appealed. *Id.*

¶ 44    On appeal, this court stated that "[w]hen an attorney appears of record on behalf of a party, a rebuttable presumption arises that the party authorized the attorney to do so." *Id.* at 93-94. We further noted that "[w]hen, however, the facts show a lack of authorization, express or implied, and there is no proof of ratification, the acts of counsel are a nullity." *Id.* at 94. The *Lydon* court concluded that, after reviewing the record, it was unable to conclude that plaintiff had given the attorney the authority to file the Cook County action and, accordingly, reversed the circuit court's ruling. *Id.*

¶ 45    Here, plaintiff contends that *Lydon* supports her position by establishing her right to rebut the presumption that Ford retained a lawyer and authorized the filing of the 2010 action. We find the reasoning in *Lydon* distinguishable from the case at bar. Most importantly, in *Lydon*, the plaintiff provided an affidavit averring that she had never met with the Cook County attorney, had never spoken with him, and did not retain him to represent her. Here, plaintiff offers no such evidence. Setting aside the fact that plaintiff failed to present any evidence regarding this contention at any point in the circuit court, or even raise this issue before the circuit court, plaintiff has utterly failed to argue before this court anything more than a bare assertion that Ford could not have entered into an attorney-client relationship because of her mental incapacity at the time the complaint was filed. Plaintiff does not suggest that she has access to evidence that would call into the question the legitimacy of the 2010 complaint, other than the letters of her treating physicians, the reports of reviewing health care professionals, and the allegations of her complaints, which were previously presented to the circuit court. Although the evidence was found sufficient to raise a question of fact as to mental capacity, it was insufficient to suggest that the 2010 complaint was a nullity.

¶ 46    Generally, the nullity rule is applicable only where an individual who is not an attorney is engaged in the unauthorized practice of law. *Applebaum v. Rush University Medical Center*,

231 Ill. 2d 429, 435 (2008). That is not the case here. Rather, the content and claims in the 2010 complaint suggest Ford's participation and awareness of the filing. In fact, in his section 2-622 affidavit attached to the complaint, Ford's attorney represented that he had obtained Ford's medical record, an action which would likely require Ford's acquiescence. Plaintiff speculates that someone other than Ford could have provided her attorney with access to Ford's medical records but, again, plaintiff offers no more than pure speculation and fails to support her contention with even the suggestion of pertinent evidence that she would present at an evidentiary hearing to rebut the presumption of a valid attorney-client relationship. In short, despite the trial court's finding that the evidence presented raised a question of fact as to Ford's mental capacity at the time the 2010 complaint was filed, such a finding does not also indicate that the 2010 action was a nullity. Accordingly, we find that plaintiff has presented no argument that would suggest she could reasonably rebut a presumption of a valid attorney-client relationship, and we find her argument that the 2010 complaint was a nullity unpersuasive.

¶ 47                              iii. *Self-Constituted Next Friends*

¶ 48       We likewise find plaintiff's reliance on *Passmore v. Walther Memorial Hospital*, 152 Ill. App. 3d 554 (1987), and *Estate of Riha v. Christ Hospital*, 187 Ill. App. 3d 752 (1989), unpersuasive. In *Passmore*, the plaintiff brought an action on behalf of his son, Edward, against Walther Memorial Hospital and various doctors for medical malpractice. *Passmore*, 152 Ill. App. 3d at 555. Edward was born in September 1961 and reached the age of majority in September 1979. *Id.* More than four years later, on December 16, 1983, he was adjudicated legally disabled. *Id.* On March 29, 1984, plaintiff filed the complaint at issue on Edward's behalf. *Id.* The complaint alleged that in May 1962, when Edward was eight months old, he was admitted to Walther Memorial Hospital, where he was treated by the defendant doctors. *Id.* As a result of the alleged malpractice, the complaint alleged that Edward became, and continued to be, disabled. *Id.*

¶ 49       Defendants filed a motion to dismiss, contending that plaintiff failed to bring the action within the limitations period, which expired in September 1981, two years after Edward reached the age of majority. *Id.* Defendants contended that since Edward was not legally adjudicated disabled during that two-year period, the statute of limitations had not been tolled. *Id.* at 555-56. The circuit court agreed with defendants and found that the case was time barred because there had been no legal adjudication of disability during Edward's minority or during the two-year period following his reaching the age of majority. *Id.*

¶ 50       On appeal, this court reversed the circuit court's ruling that plaintiff's complaint sufficiently alleged that Edward was "under legal disability continuously from the age of eight months until the action was filed." (Internal quotation marks omitted.) *Id.* at 557. The court held that the tolling provision of section 13-212 (Ill. Rev. Stat. 1985, ch. 110, ¶ 13-212 (now 735 ILCS 5/13-212 (West 2014))) was "intended to protect the rights of those who were not 'legally competent to bring actions directly' since the courts recognized that the enforcement of their rights should not be 'left to the whim or mercy of some self-constituted next friend.' " *Passmore*, 152 Ill. App. 3d at 558 (quoting *Girman v. County of Cook*, 103 Ill. App. 3d 897, 898 (1981)).

¶ 51       Similarly, in *Estate of Riha*, in August 1981, Virginia Riha filed a complaint in her individual capacity, alleging medical malpractice against Christ Hospital and 36 physicians,

and a product liability claim against Ayerst Laboratories (Ayerst). *Estate of Riha*, 187 Ill. App. 3d at 753. A year later, she voluntarily dismissed all defendants except for one doctor. *Id.* In May 1985, the probate court entered an order finding Virginia to be a disabled person and appointed Mary Riha guardian of her estate and person. *Id.* Mary subsequently filed an amended complaint, renaming as defendants several of the previously dismissed defendants, including Christ Hospital and Ayerst. *Id.* Christ Hospital and Ayerst moved to dismiss the amended complaint on the grounds that it was time barred. *Id.* Before the circuit court could rule on the motion, Mary filed another action on Virginia's behalf against Christ Hospital and Ayerst, among others. *Id.* at 753-54. Christ Hospital and Ayerst also moved to dismiss that case because of the pendency of the other action involving the same issues and parties. *Id.* at 754. The circuit court granted the motions to dismiss in both cases. *Id.*

¶ 52    On appeal, this court recognized that Virginia had not been legally adjudicated an incompetent person at the time her cause of action accrued. *Id.* Nonetheless, the court observed that a formal legal adjudication of disability was not required to show that a person was under a legal disability pursuant to section 13-211 of the Code. *Id.* Relying on *Passmore*, the court found that the complaint sufficiently alleged facts that showed Virginia was "under a legal disability" at the time her cause of action accrued. *Id.* at 755. The court noted that Mary produced medical records and psychiatric reports that established Virginia's legally disability at the time her cause of action accrued, but the circuit court did not consider this evidence "because it apparently was under the erroneous belief that a formal legal adjudication was required to establish that Virginia Riha was under a legal disability at the time her cause of action accrued." *Id.* at 756. The court determined that the question of whether Virginia was under a legal disability at the time her cause of action accrued was a question for the trier of fact to determine and, accordingly, remanded the case to the circuit court for an evidentiary hearing so that plaintiff could attempt to overcome the presumption that a person is presumed to be sane and competent. *Id.*

¶ 53    Plaintiff relies on this court's holdings in *Passmore* and *Riha* in contending that she had the right to an evidentiary hearing to establish her competency prior to the judicial adjudication. She further contends that these cases protect those who are not legally competent from the actions of "self-constituted next friends" who may not act in the best interest of the legally incompetent person before that person is adjudicated incompetent. We believe plaintiff misapplies the reasoning in these cases.

¶ 54    As the court explained in *Passmore*, the tolling provision of section 13-212

> "was designed to ensure that 'statutes of limitations [were] generally tolled during a plaintiff's infancy, mental incompetency, or imprisonment.' *** [Citation.] The tolling provision was intended to protect the rights of those who were not 'legally competent to bring actions directly' since the courts recognized that the enforcement of their rights should not be 'left to the whim or mercy of some self-constituted next friend.' [Citation.] If defendants' interpretation of this statute is accepted and the 'self-constituted next friend' fails to seek an 'adjudication' of 'legal disability' within the two-year period specified by section 13-212, the provisions of the tolling statute will have been rendered meaningless and the protection afforded to the otherwise incompetent person destroyed." (Emphasis omitted.) *Passmore*, 152 Ill. App. 3d at 558.

Plaintiff here attempts to use the language of the court in *Passmore* out of context to suggest that the attorney who filed the 2010 complaint, or whoever authorized the attorney to file the complaint, was Ford's "self-constituted next friend," and the court should have protected Ford from the attorney's improper actions. This, however, is an incorrect reading of *Passmore*.

¶ 55 The court in *Passmore* was not concerned with protecting plaintiff from the "self-constituted next friend," as plaintiff suggests, but recognized that the court could not rely on the "self-constituted next friend" to step forward within the applicable limitations period and enforce the rights of a plaintiff who suffered from mental incompetency. The court concluded that in such situations, it was equitable to toll the limitations period even though the plaintiff had not been adjudicated legally incompetent before the limitations period would have expired.

¶ 56 Here, the circuit court implicitly applied the rational of *Passmore*, finding that because there was a question of fact as to whether Ford was under a legal disability at the time her cause of action accrued, plaintiff's complaint could not be dismissed on the basis of the expiration of the statute of limitations or statute of repose. The circuit court made this finding despite the fact that plaintiff was not adjudicated incompetent until 2015, in keeping with the holding of *Passmore* that the court could not rely on Ford's "self-constituted next friend" to step forward and enforce Ford's rights within the limitations period. Nonetheless, the court found that this question of fact as to Ford's legal competency at the time her cause of action accrued was not sufficient to render the 2010 action a nullity for purposes of section 13-217. As discussed, *supra*, plaintiff has failed to suggest any evidence that would indicate that Ford did not authorize the filing of the 2010 complaint or that the complaint was otherwise improperly filed.

¶ 57 Similarly, we find that plaintiff misapplies the reasoning of *Riha*, which plaintiff suggests requires this court to remand the case for an evidentiary hearing regarding the nature and duration of her disability prior to the adjudication. Despite plaintiff's contentions to the contrary, *Riha* does not stand for the broad proposition plaintiff suggests, but merely recognized that Virginia was legally adjudicated disabled at the time her cause of action accrued in order to invoke the protections of section 13-211's tolling provision. *Estate of Riha*, 187 Ill. App. 3d at 755. The court in *Riha* remanded the cause because the circuit court did not consider the medical evidence presented "because it apparently was under the erroneous belief that a formal legal adjudication was required to establish that Virginia Riha was under a legal disability at the time her cause of action accrued." *Id.* at 756. The court recognized that such a determination was properly a question for the trier of fact and that the burden was on the plaintiff to overcome the presumption that a person is presumed to be sane and competent. *Id.*

¶ 58 Here, the circuit court recognized this presumption and found that plaintiff's complaints and the medical evidence provided raised a question of fact as to whether Ford was under a legal disability at the time her cause of action accrued. This, however, is an entirely different consideration from whether the 2010 action could be considered a nullity due to Ford's legal incapacity. As in *Passmore*, the court in *Riha* was chiefly concerned with the tolling of the applicable statute of limitations, an issue addressed by the court in this case when it determined that plaintiff's complaint could not be dismissed on statute of limitations or statute of repose grounds. As discussed, however, the court correctly found that the 2016 filing was an improper refiling of the 2010 complaint under section 13-217 and nothing in *Riha* or *Passmore* suggests that ruling was erroneous.

¶ 59                                        b. The 2014 Complaint

¶ 60        Plaintiff next contends that the court erred in finding that the 2014 complaint, filed by
plaintiff, was the one permitted refiling of Ford's 2010 voluntarily dismissed complaint.
Plaintiff contends that, at the time the 2014 complaint was filed, there had been no adjudication
regarding Ford's mental capacity and no one had been judicially appointed to bring an action
on Ford's behalf. Plaintiff asserts that the circuit court erred in applying the relation-back rule
"offensively" to legitimize the 2014 action as one filed on behalf of Ford.

¶ 61                                   i. *The Circuit Court's Ruling*

¶ 62        In finding that the 2014 action was the one refiling of plaintiff's claims permitted under
section 13-217, the circuit court noted that it was "crucial" to note that the 2014 action was
filed by the same law firm representing plaintiff in the 2016 lawsuit. The court found that
plaintiff's argument that the 2014 case was a "nullity" was unpersuasive where the suit was
filed, summonses were issued, and there was briefing before the case was removed to federal
court. The court found that although plaintiff had not yet been appointed Ford's guardian by
the probate court, this was a "technical defect, which could have been cured by actual issuance
of letter of office as guardian, and a motion for leave to substitute could have been presented
and granted." The court found that, in that case, the 2014 pleading would "have related back to
the date of the original filing of the 2014 action." The court noted that after the case was
dismissed in federal court for failure to exhaust administrative remedies, plaintiff took no
action to remand the remaining state claims against Ingalls. The court held that even though
there was no adjudication of the claim against Ingalls in that suit, the complaint still constituted
plaintiff's one permissible refiling of the 2010 action.

¶ 63        Plaintiff contends that the court erred both in applying the relation back rule to legitimize
the 2014 action and in classifying the fact that plaintiff had not yet been appointed Ford's
guardian as a mere "technical defect." Plaintiff further contends that the court erred in placing
any emphasis on the fact that the same law firm represented plaintiff in both the 2014 and 2016
actions. Plaintiff contends that the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2014) is
not concerned with the identity of the attorneys retained, but with the guardian who is
answerable to the court. Plaintiff also repeats her argument raised with regard to the 2010
complaint that, in 2014, plaintiff was no more than Ford's "self-constituted next friend" as
defined by the court in *Passmore*.

¶ 64                                   ii. *Relation-Back Doctrine*

¶ 65        In contending that the circuit court erred in finding that the 2014 filing was plaintiff's one
permitted refiling of the 2010 action under section 13-217, plaintiff contends that the circuit
court erred in its application of the relation-back rule of section 2-616(b) of the Code. 735
ILCS 5/2-616(b) (West 2014). "Section 2-616(b) *** provides that a cause of action set up in
an amended pleading shall not be time-barred if: (1) the original pleading was timely filed and
(2) the cause of action at issue grew out of the same transaction or occurrence set up in the
original pleading, even though the original pleading was defective in that it failed to allege the
performance of some act or the existence of some fact or some other matter which is a
necessary condition precedent to the right of recovery or defense asserted." (Internal quotation
marks omitted.) *American Airlines, Inc. v. Department of Revenue*, 402 Ill. App. 3d 579, 600
(2009). In such a case, the amendment would relate back to the date of the original, timely filed

pleading, for purposes of preserving the cause of action. 735 ILCS 5/2-616(b) (West 2014). Plaintiff contends that the court improperly used this doctrine "offensively" where plaintiff never sought to correct the defective pleading by filing a petition to have Ford declared incompetent during the pendency of the 2014 action and substituting herself as plaintiff.

¶ 66    We believe plaintiff's argument misses the import of the circuit court's ruling. The court did not suggest employing the relation-back doctrine, against plaintiff's express wishes, to improperly legitimize the 2014 action years after the fact. Instead, the court was explaining its reasoning for its finding that the fact that plaintiff had not yet been appointed Ford's guardian at the time the 2014 complaint was filed was not a defect that was so serious that it rendered the 2014 complaint a nullity. Rather, as the court correctly noted, it was a mere technical defect that could have easily been cured, and the amended complaint, substituting plaintiff as Ford's guardian after she had been judicially appointed, would have "related back" to the date of the original filing of the 2014 action.

¶ 67    The court observed that this finding was supported by the fact that plaintiff was, in fact, later appointed as Ford's guardian, and the fact that plaintiff was represented by the same law firm in both the 2014 and 2016 actions. The court, therefore, determined that the 2014 action should not be rendered a nullity based on this mere "technical defect." We agree. Plaintiff had a fair opportunity to present her claims, briefs were drafted, motions were filed, and defendants appeared. There is no basis to now argue that the 2014 action was a nullity. We therefore find plaintiff's extensive argument concerning the relation-back doctrine misplaced. Furthermore, for the same reasons discussed in part 2.a.iii (*supra* ¶¶ 47-58), we find plaintiff's contention that the court should have protected Ford from plaintiff as Ford's "self-constituted next friend" unpersuasive.[3]

¶ 68                                          3. *Res Judicata*

¶ 69    Plaintiff next contends that the court erred in finding that *res judicata* barred her claims against the physician defendants who were named in the 2010 complaint, but were not named in the 2014 complaint. Plaintiff asserts that there is no basis to support the circuit court's finding that *res judicata* barred her claims because, although the physician defendants were not named in the 2014 action, they could have been included.

¶ 70    Here, the circuit court found that "the doctrine of *res judicata* would also apply in this instance, because the claims against all of the physicians originally named in the 2010 filing, while not actually named as defendants, *could* have been included in the 2014 filing, but were not." (Emphasis added.) These comments by the court appear to refer to the principle under section 13-217 that a complaint is deemed to be a refiling of a previously filed complaint if it

---

[3]We further note although the 2014 action was removed to federal court and dismissed for plaintiff's failure to exhaust her administrative remedies, the reason the cause of action was dismissed after it was refiled is irrelevant. As the supreme court explained in *Timberlake*, "[u]nder the statute, the reason a cause of action was originally dismissed is important in determining whether a plaintiff can subsequently refile, but after the case has been filed a second time, the reason for the second dismissal is of no consequence at all. No matter why the second dismissal took place, the statute does not give plaintiff the right to refile again." *Timberlake*, 175 Ill. 2d at 165.

constitutes the same cause of action under the principles of *res judicata*.[4] *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 220 (1997). In *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998), our supreme court explained that separate claims will be considered the same cause of action for *res judicata* purposes if they arise from a single group of operative facts.

¶ 71    Here, each of the complaints at issue undoubtedly arise from the same group of operative facts: Ford's September 2008 treatment at Ingalls. Thus, although plaintiff did not name each of the defendants from the 2010 complaint in the 2014 complaint, she cannot avoid the section 13-217 refiling limitation where those defendants were known to the plaintiff and could have been named. See *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992) (finding that the action was barred by *res judicata* even though plaintiff listed different defendants in separate suits). This principle operates in conjunction with the tenet that *res judicata* not only bars what was actually decided in the first action, but also bars whatever could have been decided. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). In this case, plaintiff could have named each of the known defendants in the 2014 action and had her claims against them decided, but did not. Plaintiff cannot avoid the refiling limitation of section 13-217 merely by failing to include all of the defendants in each

---

[4]We observe that traditional *res judicata* principles will bar a subsequent filing only after a final judgment on the merits has been entered in a previous action (*Hudson*, 228 Ill. 2d at 467), which did not occur in this case. Generally, a voluntary dismissal does not constitute a final judgment on the merits for purposes of *res judicata*. See, *e.g.*, *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶¶ 38-40. Although the supreme court has recognized instances where a voluntary dismissal will operate as a final judgment for the purposes of *res judicata*, such a situation is not present here. See *Hudson*, 228 Ill. 2d at 473 ("[*Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996),] thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action *after a final judgment has been entered on another part of the case* subjects himself to a *res judicata* defense." (Emphasis added.)).

We also find *Johnson v. United National Industries, Inc.*, 126 Ill. App. 3d 181 (1984), cited by defendants Dr. Saif Nazir and Larry Foster, distinguishable. In that case, the court found that plaintiff's voluntary dismissal of a defendant operated as a final judgment because plaintiff failed to refile a claim against that defendant within one year under section 13-217. However, section 13-217 allows a party who voluntarily dismissed their claim to refile within one year, or within the limitations period, *whichever is greater*. 735 ILCS 5/13-217 (West 2014). Here, as discussed, the court found that Ford's incapacity tolled the limitations period, and thus the one-year limitation of section 13-217 was not applicable. We also observe that defendants Dr. Saif Nazir and Larry Foster cite *Yehouenou v. St. Joseph Hospital*, 2013 IL App (1st) 120393-U, in support of their contention that Ford's voluntary dismissal acted as a final judgment for purposes of *res judicata* after she failed to refile within one year. However, not only is the reasoning in that case distinguishable from the case at bar, but that decision is unpublished and not precedential pursuant to Illinois Supreme Court Rule 23 (eff. July 1, 2011) and cannot be cited as authority.

Moreover, the 2014 action was dismissed by the federal district court for plaintiff's failure to exhaust her administrative remedies, which is not a final judgment on the merits. See *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 44 (2007). Finally, the 2015 federal action was still pending on appeal at the time the circuit court entered its ruling in this case. Accordingly, we believe the court's comments regarding *res judicata* are a reference to how *res judicata* principles interact with the requirements of section 13-217.

- 15 -

action where the record shows that she knew about all of the defendants and knew they could have been potentially liable for her injuries. Nonetheless, plaintiff did not name all of the physician defendants in 2014 action, but did name them in the 2016. Section 13-217 provides for a limited extension to prevent injustice; it does not authorize an endless recycling of litigation. *Gendek v. Jehangir*, 119 Ill. 2d 338, 343 (1988). Accordingly, we find that the court did not err in finding that plaintiff's claims were also barred by the principles of *res judicata*.

¶ 72                          4. *Section 13-217 Bars Plaintiff's 2016 Complaint*

¶ 73      In conclusion, we find that after Ford voluntarily dismissed her complaint in 2010, she had one opportunity to refile her complaint under section 13-217. Plaintiff refiled the complaint on Ford's behalf in 2014 and, although she had not been appointed Ford's guardian, as the circuit court correctly found, this filing constituted the one refiling Ford's claims. Plaintiff's instant 2016 action, therefore, represents an impermissible second refiling of her claims. [5] Accordingly, we find the trial court did not err in granting defendants' section 2-619 motions to dismiss plaintiff's complaint.

¶ 74                                      C. Sanctions

¶ 75      Finally, we must address Ingalls's contention that the circuit court erred in denying their motion for sanctions. Following the circuit court's grant of defendants' motions to dismiss, Ingalls filed a motion for a ruling on its motion for sanctions, which was included with its motion to dismiss. The circuit court denied Ingalls's motion, and Ingalls appealed. Ingalls's appeal was later consolidated with the instant plaintiff's appeal from the circuit court's judgment.

¶ 76      On appeal, Ingalls contends that the circuit court should have granted its motion for sanctions where plaintiff's attorneys cited an unconstitutional version of section 13-217, misrepresented the law concerning section 13-217, and pursued the cause of action despite the lack of legal support. Ingalls further contends that sanctions are warranted because of plaintiff's "serial filings" in contravention of section 13-217, and where plaintiff's attorneys presented the objectively unreasonable argument that the 2014 case was a nullity.

¶ 77                                  1. *Standard of Review*

¶ 78      Illinois Supreme Court Rule 137 (eff. July 1, 2013) serves to prevent parties from abusing the judicial process by imposing sanctions on litigants who file "vexatious" and "harassing" actions based upon unsupported allegations of fact or law. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). Rule 137 provides:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall

---

[5]Because we find that the 2014 action represented the one permissible refiling of her claims, we need not address plaintiff's contention that the court erred in finding that the 2015 federal action constituted a refiling of her claims. We note only that the circuit court merely stated that "an additional argument could be made that the filing of the 2015 federal action for damages based on the same conduct was yet another refiling of the claim by Plaintiff's law firm." The circuit court did not expand on that statement, but had already found that the 2014 complaint was the one and only refiling plaintiff was allowed. Thus, the 2015 action did not form the basis for the circuit court's ruling.

be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

"Because of Rule 137's penal nature, courts must construe it strictly, must make sure the proposing party has proven each element of the alleged violation with specificity, and should reserve sanctions for the most egregious cases." *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1032 (2006). A court should not impose sanctions on a party for failing to conduct an investigation of facts and law when the party presents objectively reasonable arguments for his or her position, regardless of whether those arguments are unpersuasive or incorrect. *Id.* at 1034 (citing *Olsen v. Celano*, 234 Ill. App. 3d 1045, 1053 (1992)). Whether to grant Rule 137 sanctions is within the discretion of the trial court, and we will not reverse its decision absent an abuse of discretion. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 579 (2000).

¶ 79                                    2. *The Circuit Court's Order*

¶ 80        Here, we find that the circuit court did not abuse its discretion in denying Ingalls's motion for sanctions. In ruling on Ingalls's motion, the circuit court found that although plaintiff's attorneys should have realized that they cited an unconstitutional version of section 13-217, the error did not support the imposition of sanctions. The court further found that the fact that plaintiff made more than one refiling of the action on a basis that the circuit court ultimately found incorrect did not warrant sanctions. The court emphasized that the standard for evaluating a party's conduct in determining whether to impose sanctions is one of reasonableness under the circumstances at the time of the filing of the pleading. The court also noted that the burden was on Ingalls to show that plaintiff made assertions of fact that were untrue and made without reasonable cause. The court found that Ingalls had failed to meet that burden.

¶ 81                          3. *Sanctions Are Not Warranted in This Case*

¶ 82        Although we find that the circuit court correctly granted defendants' motions to dismiss plaintiff's complaint, "Rule 137 serves as a bulwark against truly frivolous litigation, not as a penalty against unsuccessful litigants." *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 601 (1998). In deciding whether the imposition of sanctions is appropriate, the court must determine what was reasonable for the attorney to believe at the time of filing, rather than engaging in hindsight. *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334 (1991). Plaintiff's complaint, and her arguments before this court, demonstrate that plaintiff's attorneys presented an objectively reasonable argument for her views. Although plaintiff's

attorneys were ultimately incorrect in their application of the law, Rule 137 was not intended to sanction such behavior. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154 (1993). Rather, sanctions are reserved for the most egregious cases. *Webber*, 368 Ill. App. 3d at 1032. We do not find this to be such a case.

¶ 83 Further, we find the cases cited by Ingalls in support of its contention distinguishable from the case at bar. In *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1069 (1995), plaintiff Fremarek sustained injuries during the course of his employment at the John Hancock Center. During the ensuing trial, Fremarek's counsel made statements to the court that were not supported by the law. *Id.* at 1075. The appellate court noted that "[t]he misrepresentations here did not involve some understanding of complicated facts or some obscure legal principle tangentially related to complex litigation, but rather were limited to a rudimentary issue in an otherwise ordinary case." *Id.* The court found that if Fremarek's counsel had conducted a reasonable inquiry of facts "peculiarly within the knowledge of Fremarek's attorney," and the existing law, there would have been no misrepresentation made to the court. *Id.* The court found that "these representations which reasonable inquiry would have shown to be devoid of any legal merit resulted in protracted litigation both at trial and in this appeal of what should have been a five minute exercise in statutory application." *Id.* at 1076. Accordingly, the appellate court reversed the circuit court's order denying sanctions against Fremarek's attorney. *Id.*

¶ 84 We find the situation in *Fremarek* distinguishable from the case at bar. In this case, plaintiff's attorneys did not make misrepresentations to the court that could have been resolved by a simple inquiry into the facts or relevant law. Plaintiff's complaint and the record demonstrate that at the time plaintiff's attorneys filed the amended complaint, she presented an objectively reasonable theory of recovery and did not misrepresent the relevant law or facts to the court. Although plaintiff's attorneys acknowledged citing a version of section 13-217 that was found to be unconstitutional, after this error was brought to their attention, plaintiff's attorneys contended that the governing version of section 13-217 nonetheless supported plaintiff's position. Plaintiff's attorneys thus presented an objectively reasonable argument for plaintiff's complaint, and the fact that those arguments were ultimately unpersuasive and incorrect (*Webber*, 368 Ill. App. 3d at 1032) does not support the imposition of sanctions where plaintiff's lawsuit cannot be said to be wholly frivolous (*Mandziara*, 299 Ill. App. 3d at 601).

¶ 85 Similarly, in *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 69 (2011), the attorney made a "deliberate mischaracterization" of the facts of an earlier lawsuit in an attempt to avoid having the case dismissed for *res judicata*. As discussed, plaintiff's attorney in this case made no such mischaracterization. It is also meaningful to note that in *Nelson*, the circuit court granted the defendant's motion for sanctions. *Id.* at 58. The appellate court was thus asked to determine whether the trial court's ruling was unreasonable, *i.e.*, whether the trial court abused its discretion in imposing sanctions. *Id.* at 69. The appellate court noted the deferential standard of review and found that there was sufficient evidence in the record to support the trial court's imposition of sanctions. *Id.* We find the same deference is warranted here where we cannot say that no reasonable person could have taken the view adopted by the trial court. *Id.* Accordingly, we hold that the trial court did not abuse its discretion in denying Ingalls's motion for sanctions.

¶ 86                              III. CONCLUSION

¶ 87          For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 88          Affirmed.